Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 850
Dallas, Texas 75251
Ph. (972) 991-5591
Fax (972) 991-5788

ATTORNEYS FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE | § § | |
| FINANCIAL STRATEGIES ACQUISITIONS CORP | § § § § § § § § | Case no.23-42345-11 CHAPTER 11 |
| DEBTOR | § | |

**DISCLOSURE STATEMENT OF FINANCIAL STRATEGIES ACQUISITIONS CORP
PURSUANT TO SECTION 1125
OF THE BANKRUPTCY CODE DATED JANUARY 31, 2024**

TO:   ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

I
INTRODUCTION

Identity of the Debtors

Financial Strategies Acquisitions Corp ("FSAC" or "Debtor") filed its voluntary Chapter 11 case in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division ("Court") on December 6, 2023. At the time of the filing the Debtor was an a publically held company which was formed as a special purpose acquisition company ("SPAC") for the purpose of acquiring and merging with an existing company. The Debtor proposes to complete a proposed

DEBTOR'S DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DATED JANUARY 31, 2024 - Page 1

merger or if the shareholders do not approve the purposed merger pay all existing creditors and return the excess funds to the current shareholders.

### Purpose of Disclosure Statement; Source of Information

Debtor submits this Disclosure Statement ("Disclosure Statement") pursuant to Section 1125 of the Code to all known Claimants of Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary for Creditors of Debtor in order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the Debtor's Plan of Reorganization dated January 31, 2024 ("Plan"). This Disclosure Statement describes the operations of the Debtor contemplated under the Plan. You are urged to study the Plan in full and to consult with your counsel about the Plan and its impact upon your legal rights. Any accounting information contained herein has been provided by the Debtor.

### Explanation of Chapter 11

Chapter 11 is the principal reorganization chapter of the Code. Pursuant to Chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders. Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor. After a plan of reorganization has been filed, it must be accepted by holders of claims against, or interests in, the debtor. Section 1125 of the Code requires full disclosure before solicitation of acceptances of a plan of reorganization. This Disclosure Statement is presented to Claimants to satisfy the requirements of Section 1125 of the Code.

### Explanation of the Process of Confirmation

Even if all Classes of Claims accept the plan, its confirmation may be refused by the Court. Section 1129 of the Code sets forth the requirements for confirmation and, among other things, requires that a plan of reorganization be in the best interests of Claimants. It generally requires that the value to be distributed to Claimants may not be less than such parties would receive if the debtor were liquidated under Chapter 7 of the Code.

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (½) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. Chapter 11 of the Code does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court. The plan, however, must be accepted by: (i) at least the holder of one (1) class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting; or (ii) at least the holders of one (1) class of allowed interests by two-thirds (2/3) in amount of the allowed interests of such class actually voting.

The Court may confirm the plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

Confirmation of the plan discharges the debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

### Voting Procedures

**Unimpaired Class**. all claimants are impaired under this Plan Claimants in Classes 1 and 6 are not impaired under the Plan. Such Classes are deemed to have accepted the Plan.

### Best Interests of Creditors Test

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

### Cramdown

The Court may confirm the Plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

## II
## REPRESENTATIONS

[Note: Paragraphs in brackets to be included after the Bankruptcy Court approves this Disclosure Statement.]

[This Disclosure Statement is provided pursuant to Section 1125 of the Code to all of the Debtor's known Creditors and other parties in interest in connection with the solicitation of acceptance of its Plan of Reorganization, as amended or modified. The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of Claims, to make an informed judgment in exercising its rights either to accept or reject the Plan. A copy of the Plan is attached hereto as **Exhibit "A"**.]

[After a hearing on notice, the Court approved this Disclosure Statement as containing information of the kind and in sufficient detail adequate to enable a hypothetical, reasonable investor typical of the classes being solicited to make an informed judgment about the Plan.]

The information contained in this Disclosure Statement has been derived from the Debtor, unless specifically stated to be from other sources.

NO REPRESENTATIONS CONCERNING THE DEBTORS IS AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS DISCLOSURE STATEMENT. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY

ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN. THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN. THE PLAN WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND EACH CREDITOR AND INTEREST HOLDER IS URGED TO CAREFULLY REVIEW THE PLAN PRIOR TO VOTING ON IT.

## III

## FINANCIAL PICTURE OF THE DEBTORS

### Financial History and Background of the Debtor

The Debtor was incorporated on July 1, 2020 and formed for the specific purpose of effecting a merger or business combination with an existing enterprise. This type of enterprise is commonly referred to as a Special Purpose Acquisition Company ("SPAC"). Pursuant to the terms of the SPAC the Debtor sought to raise capital through an initial public offering. To this end, on October 22, 2021, the Debtor filed its Form S-1 with the Securities & Exchange Commission ("SEC"). On December 06, 2021 the Debtor filed an Amended S-1 with the SEC. Pursuant to filings with the SEC the Debtor sought to raise capital through the public offering. the S-1 specifically notified shareholder that the proceed from the public offering would be deposited into a Trust Account but would be subject to claims of the Debtor's creditors ahead of the shareholders. The Debtor raised approximately $105,000,000. Pursuant to the SPAC guidelines, the Debtor was to use those funds to acquire a company over the next 12 months. In December 2022, the Debtor had not been successful in closing an acquisition. On or about December 6, 2022 the Debtor filed its Schedule 14A Definitive Proxy Statement ("Proxy") with the SEC. The Proxy notified shareholders that the Debtor proposed to (1) continue the SPAC to allow it to complete an acquisition and (2) allow the public shareholders the opportunity to redeem their investment if they so desired.

Approximately, $95,000,000 in funds held in trust were redeemed by th public shareholders in December 2022. After the redemption the Debtor was left with approximately $6,700,000. The Debtor continued with the SPAC and in February 2023 the Debtor filed its Business Combination Agreement disclosing that the board has approved the acquisition of Austin Biosciences Corporation ("Austin").

As noted above, the funds generated from the public offering were held under an Investment Management Trust Agreement ("Agreement") controlled by Continental Stock Transfer & Trust Company ("Continental"). Pursuant to the Agreement Continental held the funds for the benefit of the public shareholders. The Debtor notified Continental that it intended to repay creditors, offer th public shareholders the opportunity to redeem, and conclude the acquisition of Austin, however, Continental refused and would only release the funds to the public shareholders.

The Debtor filed this case to allow it to either complete the Austin acquisition or allow the redemption by public shareholders after the payment of all allowed claims against the Debtor.

## Post Petition Operations

Since the filing of the bankruptcy, the Debtor has filed a Motion with the Bankruptcy Court to have the funds currently controlled by Continental placed into a Debtor is Possession account.

## Future Income and Expenses Under the Plan

The Debtor's plan contemplates that the Debtor will acquire Austin and continued in business. It is possible that the shareholders of the Debtor will elect not to continue in business and which point the Debtor's plan is to pay all allowed creditors fo the Debtor and then distribute all remaining funds to the Shareholder on an pro rata basis .

The Debtor's projections for ongoing operations are attached as Exhibit B.

## Post-Confirmation Management

Depending upon the results of the shareholder vote, upon Confirmation of the Debtors' Plan, current management will maintain its status.

IV.

## ANALYSIS AND VALUATION OF PROPERTY

The Debtor owns an interst in approximately $6,700,000 in cash.

A liquidation analysis of the Debtors assets is attached hereto as Exhibit "C".

V.

## SUMMARY OF PLAN OF REORGANIZATION

The Debtor may continue in business. The Debtors' Plan will break the existing claims into 4 categories of Claimants. These claimants will receive cash payments over a period of time beginning on the Effective Date.

**Satisfaction of Claims and Debts**: The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Articles 5 and 6 of this Plan shall be the sole an exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests.   On the Confirmation Date, the Reorganized Debtors shall assume all duties, responsibilities and obligations for the implementation of this Plan. Any class of Claimants failing to vote on this Plan shall be deemed to have accepted this Plan in its present form or as modified or amended as permitted herein.

**Class 1 Claimants (Allowed Administrative Claims of Professionals and US Trustee)** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. This case will not be closed until all allowed Administrative Claims are paid in full. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $50,000 including Section 1930 fees. Section 1930 fees shall be paid in full prior to the Effective Date. The Debtor is required to continue to make quarterly payments to the U.S. Trustee and shall be required to file post-confirmation operating reports until this case is closed.

The Class 1 Claimants are not impaired under this Plan.

**Class 2 (Priority Tax Claimants)** are not impaired and shall be satisfied as follows: All Allowed priority tax claims shall be paid in fill on the Effective Date.

The Class 2 creditors are not impaired under this Plan.

**Class 3 Claimants (Allowed Unsecured Claims)** are impaired and shall be satisfied as follows: All Allowed claims of unsecured creditors will be paid in full on the Effective Date.

The Class 3 Claimants are not impaired under this Plan.

**Class 4 (Current Shareholders)** are impaired under the Plan and shall be satisfied as follows:

Upon the confirmation of the Plan, the current shareholders will receive treatment based upon the outcome of a shareholders meeting and vote:

1. If the current shareholders vote to consummate the pending agreement with Austin, the current shareholders will retain their existing shares. Austin will be issued shares in the Debtor. Based upon the terms of the agreement, as amended, with Austin, Austin will be issued 6,250,000 of common stock. The current shareholders hold 4,219,165 shares of common stock. If the agreement with Austin is approved the current shareholders will be diluted from 100% to 40.30% of the outstanding shares.

2. If the current shareholders do not vote to consummate the pending agreement with Austin, the current shareholder shall share pro-rata in the funds of the Debtor after payments on the Allowed Class 1, 2 and 3 claims. Based upon the Debtor records the total amount due the Class 1, 2 and 3 creditors will be no greater than $2,482,065, leaving $4,277,898 to be distributed to the shareholders.

The Class 4 claimants are impaired under this Plan.

ARTICLE VI

**MECHANICS/IMPLEMENTATION OF PLAN**

Debtor anticipates the use of the cash on hand and the vote of the shareholders to determine the continued operations of the company.

As specified in Section 1125(e) of the Bankruptcy Code, persons that solicit acceptances or rejections of this Plan and/or that participate in the offer, issuance, sale or purchase of securities offered or sold under this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, are not liable on account of such solicitation or participation for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejection of this Plan or the offer, issuance, sale or purchase of securities.

## VII.

## FEASIBILITY OF PLAN

The Debtor currently has approximately $6,759,963 on hand to maintain operations and to make payments under the Plan. the shareholders shall vote in accordance with the by laws of the Debtor concerning whether to continue operations or liquidate. .

## VIII.

## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction shall be retained under the Plan as set forth in Article 14 of the Plan.

## IX.

## ALTERNATIVES TO DEBTOR'S PLAN

If the Debtor's Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the

Debtor for distribution to its Creditors in accordance with the priorities of the Code. Here, is the Shareholders vote against the propsoed merger than the assets of the company will be liquidated.

## X
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates that there will be excess funds to pay Creditor Claims. The Plan assumes that the Debtors will be able to keep the operations at the levels set for in the projections. .

## XI.
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. In this case, the Plan anticipates that all creditors will be paid in full. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.**

## XII.
## PENDING OR ANTICIPATED LITIGATION

The Debtor has evaluated potential claims which may be brought. The Debtor does not belief and claims exist that can be brought for the benefit of the estate.

Dated: January 31, 2024.

DEBTOR'S DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DATED JANUARY 31, 2024 - Page 10

Respectfully submitted,

Financial Strategies Acquisition Corp

By: Alexander Schinzing

Its: Chief Operations Officer