IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **FINANCIAL STRATEGIES ACQUISITION** | § | Case No. 23-42345 |
| **CORP.** | § | |
| Last 4 Digits of Tax ID No. (2560) | § | |
| 7503 Maribeth Drive, Dallas, Texas 75252 | § | |
| | § | |
| DEBTOR | § | |
| | § | Chapter 11 |

## CONTINENTAL'S OBJECTION TO MOTION TO COMPEL

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Continental Stock Transfer & Trust Company ("Continental"), as Trustee of the Trust Account (each as defined herein), hereby submits this *Objection to Motion to Compel* (the "Objection"). In support of this Objection, Continental respectfully states as follows.[1]

### Preliminary Statement[2]

1. Debtor is a special purpose acquisition company ("SPAC") which exists for the sole purpose of finding and closing a business combination with a private company. Significantly,

---

[1] For the avoidance of doubt, Continental is not conceding that this Chapter 11 case is properly before this Court. However, for the purposes of this Objection only, and to protect its interests implicated by the Motion to Compel (as defined herein), Continental consents to entry of a Court order denying the Motion to Compel. Continental reserves all rights with respect to all matters other than those raised by the Motion to Compel.

[2] Capitalized terms used in the Preliminary Statement have the meaning ascribed to such terms in the body of the Objection.

Debtor has a defined time within which to accomplish this purpose, prescribed by Debtor's own incorporating documents, after which Debtor is obligated to dissolve. Debtor failed to close a business combination by its Termination Date—November 14, 2023—and is now obligated, by its own terms and by the laws of the State of Delaware, where Debtor is incorporated, to windup and dissolve. Debtor is using this bankruptcy proceeding—filed as a Chapter 11 and not Chapter 7—as an end-run around its legally-enforceable obligation to dissolve. Now, Debtor brazenly files this *Motion to Compel* [Docket No. 12] in an attempt to seize Trust Funds to which the Debtor has no legal or equitable right; funds which unquestionably belong to its Public Shareholders.[3] Worse, Debtor seeks to commandeer the Trust Funds to pay claims of insiders and affiliates of the Debtor who have expressly waived any and all right to seek to be paid from the Trust Funds, and it makes this application without putting its Public Shareholders—for whom the Trust Funds are held—on notice.

2. That the Trust Funds belong to the Public Shareholders would have been clear on the face of the motion had Debtor disclosed that the Trust Funds are held pursuant to a written agreement ("Investment Management Trust Agreement" or "IMTA") between Debtor and Continental which delineates the rights of the parties to use the Trust Funds. Instead, Debtor failed to disclose the most basic fact: that the funds it seeks are held in trust. Worse, it has failed to put on notice the Public Shareholders who indisputably have entitlement to the Trust Funds. Debtor's conclusory statements, which are contrary to the provisions of the IMTA, cannot satisfy its burden for proving ***by clear and convincing evidence*** that the Trust Account, Trust Funds, and Trust Interest are property of the estate. *See, e.g., Cash Am. Pawn, L.P. v. Murph*, 209 B.R. 419, 421

---

[3] "Public Shareholders" means holders of shares of common stock included as part of the units sold in Debtor's initial public offering ("IPO") whether such shares were purchased in the IPO or in the secondary market following the IPO.

(E.D. Tex. 1997); *In re Dolphin Titan Int'l, Inc.*, 93 B.R. 508, 512 (Bankr. S.D. Tex. 1988). In fact, the Certificate of Incorporation[4] and IMTA[5] make clear that the Trust Account, Trust Funds, and Trust Interest are *not* property of the estate. *See City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95 (3d Cir. 1994); *see also In re Jazzland, Inc.*, 322 B.R. 610, 616–17 (E.D. La. 2005), *aff'd*, 161 F. App'x 436 (5th Cir. 2006).

3. The present Motion to Compel is egregiously deceptive both in what it attempts to circumvent—the Debtor's mandatory dissolution and distribution of Trust Funds to Public Shareholders—and in what it conceals from this Court. The motion does not put the Public Shareholders on notice, does not mention, let alone attach, the controlling IMTA, and does not alert the Court to the Debtor's inability to access the Trust Funds. Debtor's Motion to Compel should be summarily denied.

## Background

4. SPACs provide an alternative means for a private company to transition to a publicly traded company, rather than going through a traditional initial public offering ("IPO"). As used to that end, a SPAC is a publicly-traded, blank check company, which has no business operations, and exists solely for the purpose of engaging in a business combination, i.e. an acquisition of a private company (the "target company"). The combined company, following the

---

[4] *Amended and Restated Certificate of Incorporation of Financial Strategies Acquisition Corp.* filed with the State of Delaware on or about December 9, 2021, and as amended and restated from time to time (the "Certificate of Incorporation"), a true and correct copy of which is attached as **Exhibit B** to the Wolf Decl.

[5] *Investment Management Trust Agreement*, dated December 9, 2021, by and between the Debtor and Continental, as amended and restated from time to time (the "IMTA"), a true and correct copy of which is attached as **Exhibit A** to the Wolf Decl.

4885-3114-4607.v7

business combination, is a publicly traded company and carries on the private target company's business.[6]

5. A SPAC raises its initial capital privately from sponsors and anchor investors before engaging in its own IPO process. Sponsors and anchor investors receive an equity interest in the SPAC, which is far greater on a per-dollar basis than the equity interest received by a public investor who invests by purchasing shares in the IPO. *See e.g.*, In re MultiPlan Corp. Stockholders Litigation, 268 A.3d 784, 791 (Del. Ch. Ct. 2022). In exchange, sponsors and anchor investors waive their entitlement to receive monies from trust funds which SPACs place in trust for the benefit of their public shareholders.

6. Before engaging in its own IPO, a SPAC is required to file, among other documents, its registration statement. The registration statement contains the prospectus which includes information concerning the SPAC, the time within which the SPAC has to complete a business combination, terms of the IPO, shareholder redemption rights, obligations and representations of the SPAC, and other information which an investor is intended to rely upon in deciding whether to invest, including the limitations on the use of funds held in trust for the IPO investors—the public shareholders. Because public shareholders invest in a SPAC before it has identified a business combination, the SPAC's representations concerning the safeguarding of trust funds are paramount to potential investors.

7. The Debtor is a SPAC[7] "formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination with

---

[6] *See* "What You Need to Know About SPACs" (Updated Investor Bulletin), May 25, 2021, https://www.sec.gov/oiea/investor-alerts-and-bulletins/what-you-need-know-about-spacs-investor-bulletin

[7] SPACs are publicly traded, blank-check companies, which have no business operations and exists solely for the purpose of engaging in a Business Combination with a target company.

4

one or more businesses" (a "Business Combination"). Registration Statement at 2.[8] The Debtor's Certificate of Incorporation prescribes a *limited and defined* existence within which the Debtor has to complete a Business Combination. Wolf Decl., Ex. B, Certificate of Incorporation at ¶ 9.2(d); *see also* Ex. C, Registration Statement at p. 69. No further vote, notice, or any other action is required to effectuate the passing of the Termination Date and the resultant termination of the Debtor's time within which to close a Business Combination. *See* Wolf Decl.,[9] ¶ 4, Ex. A.

8. If the Debtor has not consummated a Business Combination by the prescribed termination date (the "Termination Date"),[10] the Debtor is automatically "precluded from completing a Business Combination and . . . forced to liquidate[,]" terminating any interests the Debtor may have had in the Trust Funds. *See* Wolf Decl., Ex. B, Certificate of Incorporation §§ 9.1(b), 9.2(d);[11] Ex. D, Proxy Statement[12] at p. 2; Ex. A, IMTA at § 1.1(i). The State of Delaware recognizes the provisions in a certificate of incorporation as legally enforceable and a SPAC may be enjoined from pursuing business activities following its Termination Date. *See Stream TV Networks, Inc. v. SeeCubic, Inc.*, 279 A.3d 323, 336 (DE 2022); 8 Del. C. § 124. Debtor's Termination Date was self-effectuating on November 14, 2023.

---

[8] Fin. Strategies Acquisition Corp., Registration Statement (Form S-1) (Oct. 21, 2021), a true and correct copy of which is attached as **Exhibit C** to the Wolf Decl. (the "Registration Statement").

[9] As used herein, "Wolf Decl." refers to the Declaration of Francis Wolf, dated February 9, 2024, submitted herewith, in opposition to Debtor's motion to compel the distribution of the Trust Funds to Debtor's account.

[10] Section 1.1(i) of the IMTA establishes that Termination Date as January 14, 2023, subject to extension, "but in no event to a date later than December 14, 2023[.]" *See* IMTA § 1.1(i).

[11] Specifically, section 9.2(d) the Certificate of Incorporation provides that upon the occurrence of the Termination Date, the Debtor is required to (a) cease all operations except for the purpose of winding up; (b) within 10 business days redeem 100% of the shares following which the shareholders' rights would be extinguished; and (c) "as promptly and reasonably possible following such redemption . . . dissolve and liquidate." Wolf Decl., Ex. B, Certificate of Incorporation § 9.2(d).

[12] Fin. Acquisition Strategies Corp., Proxy Statement (Schedule 14A) (Nov. 11, 2022), a true and correct copy of which is attached as **Exhibit D** to the Wolf Decl. (the "Proxy Statement").

9.  Debtor's Certificate of Incorporation obligates the Debtor to initiate, within ten days of the Termination Date, the distribution of the Trust Funds held by Continental to its public shareholders. *See* Wolf Decl., Ex. B, Certificate of Incorporation, ¶ 9.2(d). The IMTA, too, obligates Continental to distribute the Trust Funds once the Termination Date has passed without the need for further instruction from the Debtor. *See* Wolf Decl., Ex. A, IMTA at ¶ 1(i). Following the Termination Date, the Debtor is precluded from engaging in any business which is not for the purpose of winding up and dissolving.[13] *See* Wolf Decl., Ex. B, Certificate of Incorporation, ¶ 9.2(d).

10. On or about December 9, 2021, the Debtor engaged in an initial public offering (the "IPO"). In connection with the IPO, the Debtor filed the Certificate of Incorporation with the state of Delaware and executed the IMTA with Continental, as trustee (the "Trustee"), each of which were publicly filed and intended to be relied upon by the Public Shareholders. The Certificate of Incorporation provides that the Debtor shall deposit the net proceeds from the IPO into a trust account "established for the benefit of the Public Stockholders."[14] Notably, section 9.3(a) of the Certificate of Incorporation provides that, while the Public Stockholders are entitled to receive the Trust Funds and Trust Interest, "no other stockholder other than a Public Stockholder shall have any interest in or to the Trust Account." *Id.* § 9.3(c). The preservation of Trust Funds for the

---

[13]  The Debtor initially indicated to Continental that the Debtor intended to liquidate and distribute the funds in the Trust Account to the Public Shareholders. *See* Wolf Decl., ¶ 4. It was not until well after the Termination Date had passed that the Debtor informed Continental that it had filed a bankruptcy proceeding.

[14]  Indeed, the Debtor continues to acknowledge, even as it attempts to convert the Trust Funds to pay its own insiders, that the Trust Account was for the benefit of its Public Shareholders. *See* Disclosure Statement, Doc. No. 29, p. 6 ("[T]he funds generated from the public offering were held under an Investment Management Trust Agreement ('Agreement') controlled by Continental Stock Transfer & Trust Company ('Continental'). Pursuant to the Agreement Continental held the funds for the benefit of the public shareholders.").

benefit of the Public Shareholders is a foundational principle of SPAC offerings.[15] A SPACs public filings are replete with representations and assurances concerning the safeguarding of Trust Funds for the benefit of public shareholders, including the execution by insiders of waivers to any entitlement to payment from Trust Funds. These waivers provide assurances that the SPAC will not use public shareholder's investments to enrich the SPAC's insiders at the expense of the public shareholders.

11.     The Certificate of Incorporation and IMTA note three potential limited and conditional interests that the Debtor may have with respect to the Trust Account, Trust Funds, or Trust Interest,[16] of which only the last is applicable where the Termination Date has passed:

- *Before* the Termination Date, the Debtor, upon written request, can use *Trust Interest* to cover any income or other tax obligations owed by the Debtor;[17]

- *Before* the Termination Date, subject to certain terms and conditions, the Debtor can use the *Trust Funds and Trust Interest* to effectuate a Business Combination; and

- *On or after* the Termination Date, the Debtor may access up to $100,000 of *Trust Interest*, if any, to pay dissolution expenses (the "Dissolution Expenses").

*See* Wolf Decl., Ex. A, IMTA § 1(i); *see also* Ex. B, Certificate of Incorporation § 9.1(b).

12.     Once the Termination Date passes, the Debtor's conditional interest in the Trust Account is capped at $100,000. The Debtor has absolutely no legal or equitable interest, whether vested, contingent or otherwise, in the Trust Funds following the Termination Date. And the

---

[15]   Continental has been the trustee for over 1,500 SPACs and the public shareholders have never, not once, received less than the full amount to which they were entitled. *See* Wolf Decl., ¶ 2.

[16]   "Trust Account," and the proceeds in the Trust Account, the "Trust Funds," and the interest income on the Trust Funds, the "Trust Interest."

[17]   Further, section 2(b) of the IMTA provides that "limited distributions" referenced in section 2(a) of the IMTA shall be made *only* from the Trust Interest, and "[e]xcept in [s]ection 2(a), *no other distributions* from the Trust Account shall be permitted except in accordance with [s]ection 1(i) [of the IMTA]." IMTA § 2(b) (emphasis added).

7

Debtor's conditional interest in the Trust Interest is expressly limited, in all circumstances, to $100,000.

13. The IMTA and Debtor's initial registration statement identify the Termination Date as December 14, 2022, acknowledging the possibility that the Termination Date may be extended for a specific time upon the vote of its shareholders, who have the opportunity to redeem at the time of the vote and receive a return of their investment if they do not support the extension. *See* Wolf Decl., Ex. A, IMTA at § 1(i); *see also* Ex. C, Registration Statement at p. 3. Debtor extended the Termination from December 14, 2022 until January 14, 2023 and was permitted, without another stockholder vote, to elect to extend the Termination Date to consummate a Business Combination on a monthly basis for up to eleven times by an additional one month each time after January 14, 2023. *See* Wolf Decl., Ex. D, Proxy Statement, Letter to Stockholders, p. 2. The monthly extensions of the Termination Date beyond January 14, 2023 were only effective, however, "upon five days' advance notice prior to the applicable Termination Date." *See* Wolf Decl., Ex. B, Certificate of Incorporation ("Such extension may be exercised by resolution of the Board, if requested by one or both of the Co-Sponsors, and **upon five days' advance notice** prior to the applicable Deadline Date."); *see also* Ex. A, Amendment to IMTA, ¶ 1.1(i) ("[T]he Board, in its discretion, **upon written notice to the Trustee**, may extend the Applicable Deadline by one month each on up to eleven occasions.").

14. Debtor did not timely provide and, indeed, has never provided the requisite notice to extend the Termination Date beyond November 14, 2023.[18] In fact, the Debtor notified

---

[18] Debtor was also obligated to "deposit into the Trust Account: for each such monthly extension, the lesser of (i) $50,000 or (ii) $0.05 for each then-outstanding Offering Share." Wolf Decl., Ex. C, Registration Statement, p. 3. Debtor stopped paying the requisite monies to the Trust even before it stopped providing the requisite notice. *See* Wolf Decl., ¶ 5.

Continental in writing, on November 8, 2023, that it had decided to redeem its Public Shareholders. *See* Wolf Decl., ¶ 4. Thus, the Termination Date passed on November 14, 2023. The Debtor was precluded from closing a Business Combination as of that date and was obligated to dissolve well before it commenced this Chapter 11 proceeding.[19]

## Argument

I. **THE TRUST ACCOUNT, TRUST FUNDS, AND TRUST INTEREST ARE NOT PROPERTY OF THE ESTATE AND, THUS, THEIR TURNOVER CANNOT BE COMPELLED.**

15. Under section 541(a) of the Bankruptcy Code, a debtor's estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). "Despite [section 541's] broad definition, the estate does not receive more rights than those that the debtor has in property as of the commencement of the case—in other words, if a debtor's interest in property is limited at the time of filing, the estate's right in the property is also so limited." *In re AFI Servs., LLC*, 486 B.R. 827, 835 (Bankr. S.D. Tex. 2013) (collecting cases). Further, the termination of a contingency giving rise to a debtor's interest in property terminates the debtor's interests in such property. *See, e.g., Jazzland*, 322 B.R. at 618; *Affiliated Computer Sys. v. Sherman (In re Kemp)*, 52 F.3d 546, 552–54 (5th Cir. 1995), *Wilson v. United Savings of Tex. (In re Missionary Baptist Found. of Am., Inc.)*, 792 F.2d 502, 506 (5th Cir. 1986).

---

[19] Even assuming, arguendo, that the termination date was extended to December 14, 2023, which it was not in the absence of the requisite notice and payments to the Trust Account, December 14, 2023, too, has passed and the Termination Date, which is self-effectuating, is not extended by the filing of this proceeding. Neither section 541(a) of the Bankruptcy Code nor section 362(a) of the Bankruptcy Code prevent the automatic termination of a contingent or conditional contractual right or interest by a contract's own terms postpetition. *See, e.g., Fornesa v. Fifth Third Mortg. Co.*, 897 F.3d 624, 627 (5th Cir. 2018); *In re Meinke, Peterson & Damer, P.C.*, 44 B.R. 105, 107 (Bankr. N.D. Tex. 1984) (same); *see also, e.g., Hazen First State Bank v. Speight*, 888 F.2d 574, 576 (8th Cir. 1989); *In re Margulis*, 232 B.R. 130, 133 (Bankr. S.D.N.Y. 2005)

4885-3114-4607.v7

16. "[I]t is the Debtor's burden to show by *clear and convincing evidence* that the [property] is property of the estate." *Dolphin Titan*, 93 B.R. at 512 (emphasis added); *see also Cash Am. Pawn*, 209 B.R. at 421 (noting that the burden is on the Debtor to prove that property is property of the estate and that the standard for such burden is "clear and convincing evidence").[20]

17. It is a "well-settled principle that debtors do 'not own an equitable interest in property . . . h[e]ld in trust for another,' and that therefore funds held in trust are not 'property of the estate.'" *City of Farrell*, 41 F.3d at 95 (quoting *Begier v. I.R.S.*, 496 U.S. 53, 59 (1990)). Here, the Trust Funds and Trust Interest are held in trust in the Trust Account by a third-party Trustee for the benefit of the Public Shareholders. *See Disclosure Statement of Financial Strategies Acquisitions Corp. Pursuant to Section 1125 of the Bankruptcy Code Dated January 31, 2024, In re Fin. Strategies Acquisition Corp.*, Case No. 23-42345 (BTR) (Bankr. E.D. Tex. Feb. 2, 2024) [Docket No. 29] at 6 ("Pursuant to the [Trust] Agreement Continental held the funds for the benefit of the public shareholders."). Therefore, it cannot be the case that a trust where the Debtor holds neither an equitable interest nor legal title is property of the estate, and therefore, the Trust Account, Trust Funds, and Trust Interest are not property of the estate.

18. To the extent the Court views the IMTA as more akin to an escrow arrangement, the outcome is the same: "Generally, under bankruptcy law funds held in escrow are not property of the estate[.]" *Jazzland*, 322 B.R. at 616. This bankruptcy truism still holds even if "the debtor may have certain rights under the escrow agreement and, therefore in the assets escrowed." 5 Alan

---

[20] For the avoidance of doubt, the Debtor did not present any evidence to support its contention in the Motion to Compel that the Trust Account, Trust Funds, and/or Trust Interest were property of its estate, and therefore, the Debtor cannot meet its burden to prove that the Trust Account, Trust Funds, and Trust Interest are property of the estate by clear and convincing evidence.

4885-3114-4607.v7

N. Resnick and Henry J. Sommer, Collier on Bankruptcy ¶ 541.09A[2], at 541–53 (15th ed. 2004).[21]

19. Here, the Trust Account is governed by a formal agreement, the IMTA, governing the Trust Funds and Trust Interest in the Trust Account and the delivery thereof to the Public Shareholders depending on the occurrence of certain contingencies. *See generally* IMTA. The Trustee is the third-party depositary between the Debtor and the Public Shareholders. *See id.* Recitals, § 1(a).

20. There was only ever one circumstance in which the Debtor would have any interest to the Trust Funds, but the contingency upon which the Debtor's interest relied has not, and cannot, come to pass. **Before the Termination Date** on November 14, 2023, the Debtor had a contingent interest in the Trust Funds in the limited circumstance that the Debtor consummated a Business Combination before the Termination Date. That opportunity has now passed, and the Debtor is indisputably foreclosed from consummating a Business Combination by the terms of its incorporating documents.[22] Thus, at the time of commencement of this case—which was after the Termination Date—the Debtor had no legal or equitable interest in the Trust Funds, contingent or otherwise.

---

[21] Courts look to state law to determine whether an escrow exists. *See, e.g., In re Kemp*, 52 F.3d 546 (5th Cir. 1995); *In re Missionary Baptist Found. of Am., Inc.*, 792 F.2d 502, 504 (5th Cir. 1986). The IMTA is governed pursuant to New York law. IMTA § 7(b). "Under New York law, an escrow transaction exists when there is (i) an agreement (formal or nonformal) covering the subject matter and delivery of the same, (ii) a third party depositary, (iii) delivery of the subject matter to a third party conditioned upon the performance of some act or the happening of the event, and (iv) relinquishment by the promisor." *In re DeFlora Lake Dev. Assocs., Inc.*, 628 B.R. 189, 198 (Bankr. S.D.N.Y. 2021).

[22] Debtor's Plan of Reorganization underscores the impropriety of this proceeding, as Debtor brazenly asserts that it intends to hold a shareholder vote to consummate a business combination, when it is expressly forbidden from doing so by the terms of its Certificate of Incorporation, which is true now and was true at the time the Debtor commenced this proceeding.

11

21. There were only two limited circumstances in which the Debtor could access the Trust Interest: (1) *before the Termination Date*, the Debtor was able to use the Trust Interest to pay the Debtor's taxes; and (2) for dissolution expenses expressly capped at $100,000. At the time this proceeding was commenced, the Debtor's *only* contingent interest in the Trust Interest was capped at $100,000 for Dissolution Expenses.[23] The Debtor had no other legal or equitable interest to the Trust Interest.

## II.   CREDITORS IDENTIFIED IN THIS PROCEEDING ARE NOT LEGITIMATE CREDITORS

22. Many of the creditors identified in the underlying bankruptcy proceedings do not have legitimate claims that can be assessed against the Trust Funds. That is because they are affiliated with the Debtor or are otherwise insiders who are not entitled to collect payment from the Trust Funds, as expressly stated in the Prospectus.

23. Debtor's Prospectus provides that Debtor's co-sponsors will not be paid from Trust Funds. The Prospectus states:

> There will be no finder's fees, reimbursement, consulting fee, non-cash payments, monies in respect of any payment of a loan or other compensation paid by us to our initial stockholders, officers or directors, or any affiliate of our initial stockholders or officers prior to, or in connection with any services rendered in order to effectuate, the consummation of our initial business combination (regardless of the type of transaction that it is). However, the following payments will be made to our initial stockholders, officers or directors, or our or their affiliates, **none of which will be made from the proceeds of this offering held in the trust account** prior to the completion of our initial business combination...."

---

[23] For the avoidance of doubt, even if the Debtor may have a limited and contingent interest in $100,000 of the Trust Interest – which itself is doubtful as the Debtor has identified no dissolution expenses - it does not have any legal or equitable interest in the Trust Funds.

12

*See* Wolf Decl, Ex. C, Registration Statement, p. 24. The Prospectus defines "initial stockholders," to include Debtor's co-sponsors and anchor investors. Thus, Debtor's co-sponsors are not entitled to pay paid from the Trust Funds. *See id.* at p. 1.

24. Celtic Asset & Equity Partners, Ltd. ("Celtic Asset"), is identified in Debtor's bankruptcy filings as a creditor who is owed $157,000.00. Celtic Asset is an affiliate of Debtor's co-sponsor, Celtic Sponsor VII LLC. *See* Wolf Decl., Ex. C, Registration Statement, p. 1. Moreover, Debtor's Chief Executive Officer, Alexander Schinzing ("Schinzing"), is the Managing Director and owner of Celtic Asset, as he testified at the Creditors' Meeting held on January 18, 2024. Thus, Celtic Asset has waived any ability to be paid from Trust Funds.

25. FSC Sponsor LLC ("FSC") is identified as a creditor who is owed $203,000.00. FSC is a co-sponsor of Debtor and, thus, is not entitled to payment from the Trust Funds, as expressly provided in the Prospectus. *See* Wolf Decl., Ex. C, Registration Statement, p. 1.

26. Gregory A. Gaylor[24] is identified as a creditor who is owed $224,787.05, presumably in connection with the Securities Purchase Agreement, whereby Gaylor received, in exchange for an investment in Debtor, a $200,000 promissory note ("Gaylor Note"), 20,000 shares of Debtor's Class A common stock, and certain warrants. *See* Wolf Decl., Ex. F, Gaylor Letter Agreement, p. 1. In connection therewith, Gaylor entered into a Letter Agreement, dated August 17, 2022 ("Gaylor Letter Agreement") with Debtor in which Gaylor "waive[d] any right, title, interest or claim of any kind in or to any monies held in the Trust Account." *See id.* Further, pursuant to the Gaylor Note, Gaylor "waive[d] any and all right, title, interest or claim of any kind

---

[24] Upon information and belief, Gaylor has a history of perpetrating criminal theft and tax evasion. Gaylor was found guilty in New Hampshire state court for multiple theft counts and one count of willful evasion of the New Hampshire business profits tax arising out of his involvement in a business partnership. While the jury was deliberating at his trial, Gaylor fled to Switzerland and was later extradited. *See State v. Gaylor*, 969 A.2d 333, 334 (N.H. 2009).

4885-3114-4607.v7

("Claim") in or to any distribution of or from the trust account." *See* Wolf Decl., Ex. G, Gaylor Note, ¶ 11. Thus, Gaylor does not have any entitlement to payment from Trust Funds.[25]

27. Emil Assentato ("Assentato") is identified as a creditor who is owed $250,000. Assentato is named in the Prospectus as an insider who is not entitled to payment from Trust Funds. *See* Wolf Decl., Ex. C, Registration Statement, p. 24 ("[T]he following payments will be made to our initial stockholders, officers or directors, or our or their affiliates, none of which will be made from the proceeds of this offering held in the trust account …: $250,000 in loans made to us by Emil Assentato."). Indeed, the promissory note given by the Debtor to Assentato ("Assentato Note") affirms that Assentato "hereby waives any right, title, interest or claim of any kind ('Claim') in or to any distribution of or from the Trust Account, and hereby agrees not to seek recourse, reimbursement, payment or satisfaction for any Claim against the Trust Account for any reason whatsoever." *See* Wolf Decl., Ex. H, Assentato Note, p. 3. Thus, Assentato is not entitled to payment from Trust Funds.

28. Temmelig Investor LLC ("Temmelig") is identified as a creditor who is owed $470,000. Temmelig's address is listed in the care of Celtic Asset, the co-sponsor of Debtor and Schinzing's company. Presumably, Temmelig's receivable is in connection with the two promissory notes ("Temmelig Notes") which Temmelig received in exchange for investment in the Debtor. Both of the Temmelig notes provide that Temmelig "waives any and all right, title, interest or claim of any kind ("Claim") in or to any monies in, or any distribution of or from, the Trust Account, and hereby agrees not to seek recourse, reimbursement, payment or satisfaction for any Claim against the Trust Account or any reason whatsoever." *See* Wolf Decl., Ex. I, Temmelig

---

[25] Moreover, Greg Gaylor is identified as Principal Associate of Celtic Asset (https://celticequitypartners.com/about-celtic-asset-equity-partners/), and would be well aware of the limitations on distributions from Trust Funds.

Notes, p. 2. Indeed, Debtor's Form 8-K, dated June 15, 2023 and publicly filed, states: "As previously disclosed, on December 9, 2022, Financial Strategies Acquisition Corp. (the 'Company') issued an unsecured promissory note in the principal amount of $600,000 (the 'Promissory Note') to an affiliate of its co-sponsors, Temmelig Investor LLC…. In the event that the Company does not consummate a Business Combination, the Promissory Note will be repaid only from amounts remaining outside of the trust account (the 'Trust Account')." *See* Wolf Decl., Ex. J, Form 8-K, p. 1. Thus, Temmelig is not entitled to payment from Trust Funds.

29.   James D. Story ("Story") is identified as a creditor who is owed $158,000. Story also waived his entitlement to payment of Trust Funds. Story is an owner of Austin Biosciences Corp. ("ABC"),[26] a private entity with whom Debtor attempted a merger, but an insufficient number of Debtor's Public Shareholders approved of the merger. Instead, most Public Shareholders redeemed their interests in Debtor and withdrew $95,484,415.86 from Trust Funds. *See* Wolf Decl., ¶ 6. Thus, the proposed Business Combination with ABC failed.[27] Before the Business Combination failed, ABC and Debtor entered into a Business Combination Agreement, in which ABC and its affiliates waived its entitlement to receive payment from Trust Funds. *See* Wolf Decl., Ex. K, Business Combination Agreement, p. 60 ("[ABC] hereby agrees on behalf of itself and its Affiliates that, notwithstanding anything to the contrary in this Agreement, none of the [ABC] or Merger Sub nor any of their respective Affiliates do now or shall at any time hereafter have any right, title, interest or claim of any kind in or to any monies in the Trust Account, or make any claim against the Trust Account, regardless of whether such claim arises as a result of, in

---

[26]   *See* Business Combination Agreement, p. 1, sec.gov/Archives/edgar/data/1817565/000110465923023005/tm237173d1_ex2-1.htm.

[27]   Debtor's suggestion in its Disclosure Statement that Continental somehow impeded the Debtor's ability to consummate a business combination is entirely false. See Wolf Decl., ¶ 6.

connection with or relating in any way to, this Agreement or any proposed or actual business relationship between SPAC or any of its Representatives, on the one hand, and [ABC] or Merger Sub or any of their respective Representatives, on the other hand, or any other matter, and regardless of whether such claim arises based on contract, tort, equity or any other theory of legal liability [collectively, the Released Claims"].)

30. The creditors identified here, who have waived any entitlement to receive payments from Trust Funds, make up more than $1.4M of the $2.7M liabilities which Debtor identifies in the Voluntary Petition. There may be other creditors, too, who have waived their entitlement to receive payment from Trust Funds. There may be other creditors, too, who do not wish to seek payment from Trust Funds, on the grounds that safeguarding trust funds for the benefit of public shareholders is a foundational principal of the SPAC market. Other creditors may have tort claims against Debtor which they wish to pursue.

31. It is apparent that Debtor seeks access to the Trust Funds, in which it has no interest, in order to pay itself and its affiliates monies which they affirmatively waived any entitlement to receive.[28] Debtor's nefarious motives in filing this proceeding are underscored by its filing of a Chapter 11 petition seeking to reorganize, when it is well aware that it has no entitlement to reorganize and that its lifetime, by the terms of its own incorporating documents and public filings with the Commission, has terminated. Perhaps most egregiously, in seeking the distribution of Trust Funds, Debtor failed to acknowledge that they were trust funds at all, failed to attach the document governing their distribution, and failed to put on notice the public shareholders for whose benefit the Trust Funds are held and for whose benefit the Debtor itself repeatedly promised

---

[28] Indeed, the Debtor acknowledges in its Plan of Reorganization that it would only pay monies from the Trust Account to Public Shareholders after Debtor paid its own insiders. *See* Plan of Reorganization, Doc. No. 30, ¶ 5.5(2).

to safeguard the funds. Thus, Debtor's Motion to Compel distribution of the Trust Funds to Debtor should be denied.

## Conclusion

32. For the reasons set forth in this Objection, Continental respectfully requests that the Court deny the Motion to Compel.

Dated: February 9, 2024

Respectfully submitted,

/s/ C. Josh Osborne
C. Josh Osborne
Texas Bar I.D. No. 24065856
Eric T. Haitz
Texas Bar I.D. No. 24101851
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: c.joshosborne@bondsellis.com
Email: eric.haitz@bondsellis.com

and

Mark Harmon
New York Bar No. 1041482
(admitted *pro hac vice*)
**CHIESA SHAHINIAN & GIANTOMASI PC**
11 Times Square, 34th Floor
New York, NY 10036
Telephone: (212) 324-7259
Email: mharmon@csglaw.com

4885-3114-4607.v7

>Sam Della Fera, Jr.
>New Jersey Bar No. 072301992
>(admitted *pro hac vice*)
>**CHIESA SHAHINIAN & GIANTOMASI PC**
>105 Eisenhower Parkway
>Roseland, NJ 07068
>Telephone: (973) 325-1500
>Email: sdellafera@csglaw.com
>
>**COUNSEL FOR CONTINENTAL STOCK TRANSFER & TRUST COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2024, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Eastern District of Texas on all parties registered to receive notice through the Court's ECF service. I further certify that I caused a copy of the foregoing document to be served via: (i) email to Chase Bank c/o Greg Sutton at gregory.e.sutton@jpmchase.com; and (ii) first class mail, postage prepaid, on all parties on the attached service list.

>/s/ C. Josh Osborne
>C. Josh Osborne

4885-3114-4607.v7

IN RE: FINANCIAL STRATEGIES
ACQUISITION CORP., Debtor
Case No. 23-42345
**SERVICE LIST**

Agellanm Commerical REIT US Lp
101 E Old Settlers Blvd
Round Rock, TX 78664-2268

Emil Assentato
141 Piping Rock Rd.
Boston, MA 02241-6423

BROADRIDGE FINANCIAL
SOLUTIONS
1155 LONG ISLAND AVENUE
EDGEWOOD NY 11717-8309

Broadridge res
P.O. BOX 416423
Boston, MA 02241-6423

John Byron
Steptoe LLP
227 West Monroe  Ste 4700
Chicago, IL 60606-5058

CALIENTE MANAGEMENT L L C
2626 Cole Ave, Ste.300
Dallas, TX 75204-1094

CICERO TRANSACT GROUP, INC.
1858 PLEASANTVILLE RD, STE 110
Croton Falls, NY 10519

Celtic Asset & Equity Partners, Ltd.
2626 Cole Ave. Ste. 300
Dallas, TX 75204-1094

Cicero Transact Group, Inc.
1858 Pleasantville Rd., Ste. 110
Briarcliff Manor, NY 10510-1025

Cision US Inc.
12051 Indian Creek Ct.
Beltsville, MD 20705-1261

Delaware Secretary of State
401 Federal St., Ste. 3
Dover, DE 19901-3639

EAGLE POINT CORE INCOME FUND
C/O EAGLE POINT CREDIT
MANAGEMENT LLC
600 STEAMBOAT RD STE 202
Greenwich, CT 06830-7181

FRIO INVESTMENTS L L C
2626 COLE AVE STE 300
Garland, TX 75041

FSC Sponsor LLC
c/o Celtic Asset & Equity Partners, Ltd
2626 Cole Ave., Ste. 300
Dallas, TX 75204-1094

Financial Strategies Acquisition Corp
7503 Maribeth Drive
Dallas, TX 75252-6819

Fleichman Sociedade De Advogados
Rua Batataes 460, Slas 22
Jardim Paulista
Sao Paolo SE cep: 01423-010
Brazil

GREENTREE FINANCIAL GROUP INC
7951 SW 6TH ST STE 216
Fort Lauderdale, FL 33324-3276

GREGORY GAYLOR TRUSTEE
THE WILLIAM C GAYLOR &
DOROTHY J GAYLOR REV TRUST
7503 Maribeth Drive
Dallas, TX 75252-6819

Gregory A. Gaylor
7503 Maribeth Dr.
Dallas, TX 75252-6819

Jennifer Gehrt
PO Box 224409
Dallas, TX 75222-4409

Grant Thornton LLP
2001 Market St.
Two Commerce Square, Ste. 700
Philadelphia, PA 19103

Haynes & Boone, LLP
P.O. Box 841399
Dallas, TX 75284-1399

I-BANKERS SECURITIES INC
1208 SHADY LN N
Keller, TX 76248-2733

Internal Revenue Service
Centralized Insolvency Operation
Post Office Box 7346
Philadelphia, PA 19101-7346

James D. Story
338 Silent Spring Road
Boerne, TX 78006-8273

JAMES HOPKINS
1515 N FEDERAL HWY STE 300
Boca Raton, FL 33432-1994

James Khurshid
Beams End
Old Brighton Road
Pease Pottage, West Sussex RH11 9AJ
United Kingdom

Eric A Liepins
Eric A. Liepins, P.C.
12770 Coit Road  Suite 850
Dallas, TX 75251-1364

Maverick Financial Advisors, LLC
7503 Maribeth Dr.
Dallas, TX 75252-6819

Morrow Sodali LLC
333 Ludlow St., 5th Fl. South Tower
Stamford, CT 06902-6991

Mr. Emil Assentato
141 Piping Rock Road
Boston, MA 02241-6423

PCT PARTNERS LLC
C/O EAGLE POINT CREDIT
MANAGEMENT LLC
600 STEAMBOAT RD STE 202
Greenwich, CT 06830-7181

Periscope Capital Inc.
333 Bay St. Suite 1240
Toronto, Ontario M5H 2R2
Canada

Jeffrey Potts
Steptoe LLP
717 Texas Avenue Ste 2800
Houston, TX 77002-2809

R DOUGLAS ARMSTRONG PHD
1515 N FEDERAL HWY STE 300
Boca Raton, FL 33432-1994

ROBERT D KEYSER JR
1515 N FEDERAL HWY STE 300
Boca Raton, FL 33432-1994

Reliant CPA, P.C.
895 Dove Street, Suite 300 #300180
Newport Beach, CA 92660-2996

Jason M. Rudd
Wick Phillips Gould & Martin LLP
3131 McKinney Ave.
Ste 500
Dallas, TX 75204-2441

Darren Ryemill
West View House
15 Church Lane
Bristol BS376NB Old Sadbury
United Kingdom

SEA OTTER SECURITIES GROUP
LLC
107 GRAND ST FL 7
Dallas, TX 75204-1094

SIXTH BOROUGH CAPITAL FUND
LP
1515 N FEDERAL HWY STE 300
Boca Raton, FL 33432-1994

Shaolin Capital Management, LLC
c/o Wick Phillips Attn: Jason Rudd
3131 McKinney Ave. Suite 500
Dallas, TX 75204-2441

Spring Creek Capital LLC
4111 East 37th Street North
Wichita, KS 67220-3203

Temmelig Investor LLC
c/o Celtic Asset & Equity Partners, Ltd
2626 Cole Ave. Ste. 300
Dallas, TX 75204-1094

Toppan Merrill LLC
PO Box 74007295
Chicago, IL 60674-7295

U.S. Attorney General
Department of Justice
Main Justice Building
10th & Constitution Ave., NW
Washington, DC 20530-0001

US Trustee
Office of the U.S. Trustee
110 N. College Ave. Suite 300
Tyler, TX 75702-7231

John M. Vardeman
UST Office
110 N. College St., Suite 300
Tyler, TX 75702-7231

Christopher J. Volkmer
Cavazos Hendricks Poroit PC
900 Jackson St., Ste. 570
Dallas, TX 75202-2413